IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Keisha James, | 3:25-cv-12524-JFA-PJG |
| Plaintiff, | Case No.: |
| v. | **COMPLAINT**<br>Jury Trial Requested |
| Omni Dental of Sumter, LLC, Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities, | |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiff Keisha James, by and through her undersigned counsel, brings this action alleging Race Discrimination and a Racially Hostile Work Environment pursuant to 42 U.S.C. § 1981, as well as Intentional Infliction of Emotional Distress, against Defendant Omni Dental of Sumter, LLC and Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities. Plaintiff further asserts claims for Breach of Contract and Breach of Contract Accompanied by Fraudulent Intent against Defendant Omni Dental of Sumter, LLC. In addition, Plaintiff brings forth a claim of Civil Conspiracy against Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities. These claims are based on the following factual allegations.

## <u>JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the case presents a federal question arising under 42 U.S.C. § 1981, which prohibits race discrimination in employment and in the making and enforcement of contracts.

2. Jurisdiction is also proper under 28 U.S.C. § 1343, as Plaintiff seeks to redress the deprivation of rights secured by federal law, including civil rights related to employment, equal protection, and contractual relationships.

3. This Court has supplemental jurisdiction over Plaintiff's related state law claims—including breach of contract, breach of contract accompanied by fraudulent intent, intentional infliction of emotional distress, and civil conspiracy—pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in the United States District Court for the District of South Carolina, Columbia Division, because the Causes of Action arose in Sumter County, which is therein the Columbia Division. The acts and practices complained of occurred in Sumter County and Sumter County is where Defendant Omni Dental of Sumter, LLC does business as a dental clinic/center providing general dental care services and where the Individual Defendants are situated, do business, and may be found.

## PARTIES

5. Plaintiff Keisha James is a citizen of the United States and currently resides in the city of Manning in Clarendon County, South Carolina.

6. Defendant Omni Dental of Sumter, LLC (hereinafter, "Defendant Omni Dental") is a privately formed and operated limited liability company organized under the laws of the State of South Carolina, with its principal place of business located at 625 Constitution Drive, Sumter, South Carolina 29154. Defendant Omni Dental is not a governmental entity or a unit of the State of South Carolina, but rather a private business entity formed pursuant to state law. At all times relevant to this Complaint, Defendant Omni Dental acted by and

through its agents, servants, and employees, who were acting within the course and scope of their employment.

7. Defendant Dr. Brandon Cain (hereinafter, "Defendant Dr. Cain") is a citizen and resident of the State of South Carolina. Upon information and belief, at all times relevant to this Complaint, Defendant Dr. Cain was employed by or affiliated with Defendant Omni Dental and was acting within the course and scope of his employment or agency.

8. Defendant Dr. Robert Ellis (hereinafter, "Defendant Dr. Ellis") is a citizen and resident of the State of South Carolina. Upon information and belief, at all times relevant to this Complaint, Defendant Dr. Ellis was employed by or affiliated with Defendant Omni Dental and was acting within the course and scope of his employment or agency.

9. Defendant Gina Craig (hereinafter, "Defendant Craig") is a citizen and resident of the State of South Carolina. Upon information and belief, at all times relevant to this Complaint, Defendant Craig was employed by or affiliated with Defendant Omni Dental and was acting within the course and scope of her employment.

10. Defendants Dr. Cain, Dr. Ellis, and Craig are sued in their individual capacities for their roles in engaging in, furthering, and ratifying unlawful conduct as described herein. Their actions were taken within the scope of their employment with Defendant Omni Dental and involved active participation in, or deliberate indifference to, the violation of Plaintiff's federally protected rights. Defendant Omni Dental is sued as the employer responsible for the discriminatory and unlawful acts committed by its agents and employees, acting on its behalf and with its full knowledge or approval.

## FACTS

11. Plaintiff is a 49-year-old African American female who was hired on or about March 17, 2015, as a Patient Coordinator by Ray Family and Cosmetic Dentistry, a practice owned and

operated by Dr. Arian Ray (hereinafter, "Dr. Ray"), an African American dentist and minority owner of the successor entity, Defendant Omni Dental.

12. When Plaintiff commenced her employment, Ray Family and Cosmetic Dentistry operated independently and was not affiliated with Defendant Omni Dental.

13. In or around November 2024, Ray Family and Cosmetic Dentistry merged with Defendant Omni Dental, with Dr. Ray retaining a twenty percent (20%) ownership interest in the newly formed entity.

14. Plaintiff remained employed through the merger and continued in her role without interruption until she was abruptly and unjustly terminated on January 26, 2025.

15. Throughout her tenure, Plaintiff maintained an excellent work record, receiving no formal warnings, reprimands, or documentation reflecting any deficiencies in her job performance. She consistently received positive feedback from colleagues and supervisors.

16. At the time of the merger, Plaintiff and other existing employees were expressly assured that the terms and conditions of their employment would remain unchanged. They were told that their job roles, responsibilities, and workplace policies would continue as they had under Dr. Ray's ownership and management, without disruption or alteration.

17. Specifically, Defendants Dr. Cain and Craig personally confirmed to Plaintiff and other staff members that there would be no changes to existing workplace arrangements, policies, or expectations. These representations were made to instill confidence in the transition and to induce continued employment under the new ownership structure.

18. Furthermore, Defendant Omni Dental made no effort to introduce or distribute any new employee handbook, policy manual, or documented workplace rules. This included no written anti-nepotism policy or guidance restricting family members from working

together—an issue that would later be falsely used as a pretext to force the resignation of Plaintiff's daughter.

19. Plaintiff's daughter, Kashae James, began her employment as a Patient Coordinator with Ray Family and Cosmetic Dentistry in or around February 2024, and continued in that role following the practice's merger with Defendant Omni Dental. Like Plaintiff, she consistently performed her duties in a competent and professional manner and received no disciplinary actions, counseling, or complaints regarding her performance.

20. Plaintiff and her daughter were expressly permitted to work together under the pre-merger policies established by Ray Family and Cosmetic Dentistry. During the merger transition, they were assured by Defendant Omni Dental representatives that such arrangements would remain unchanged, inducing Plaintiff to remain in her role and forming part of her continued employment agreement.

21. Plaintiff reasonably relied on these material terms of her employment agreement, to her detriment. Such reliance was foreseeable by Defendants.

22. However, on or about November 7, 2024, Defendant Craig—a recently appointed Caucasian Office Manager of Defendant Omni Dental—unilaterally informed Plaintiff and her daughter that Defendant Omni Dental's policies allegedly prohibited the simultaneous employment of family members.

23. Plaintiff raised concerns about the abrupt change and reminded Defendant Craig that she and other Defendant Omni Dental managerial and supervisory staff had assured employees that the merger would not affect existing working conditions or jeopardize the employment of family members. Dr. Ray later reaffirmed this assurance to Defendant Craig, stating he saw no issue with their continued employment. Nevertheless, his input was disregarded.

24. Yet, on or about December 11, 2024, approximately two weeks after the initial discussion regarding the employment of family members, Defendant Craig demanded that either Plaintiff or her daughter resign immediately, despite the absence of any documented policy supporting this ultimatum.

25. Subsequently, Plaintiff's daughter resigned to preserve her mother's tenure, which had spanned nearly a decade.

26. Defendant Omni Dental's reliance on an unwritten and undisclosed anti-nepotism policy directly contradicted the express terms and assurances of Plaintiff's employment agreement.

27. Moreover, Defendant Omni Dental's breach was accompanied by fraudulent intent, as the assurances given at the time of the merger were knowingly false or made with reckless disregard for the truth, and were intended to mislead Plaintiff to her detriment.

28. In addition to the contractual breach, this forced resignation was premised on a fabricated and undocumented policy and marked the onset of a racially discriminatory and hostile work environment orchestrated by the Defendants.

29. Following Plaintiff's daughter's forced resignation, Plaintiff—a longstanding African American employee— was subjected to a sudden and disproportionate increase in responsibilities on a consistent basis. She was assigned to complete a newly implemented "Production Spreadsheet," a detailed daily reporting task that was not required of any similarly situated Caucasian employee, including Michelle McCoy—a Caucasian colleague hired at the same time, in the same role, performing similar duties.

30. Under the direction of Defendant Craig, Plaintiff was solely tasked with completing the newly implemented "Production Spreadsheet." Plaintiff was required to complete and submit the spreadsheet every evening after business hours, imposing daily work obligations beyond her scheduled shift.

31. The spreadsheet was introduced during a Zoom meeting in which Christina Tyler (hereinafter, "Ms. Tyler"), a Caucasian affiliate of Defendant Omni Dental, was brought in specifically to present the new reporting requirements to Plaintiff. However, despite her role in introducing the "Production Spreadsheet," Ms. Tyler provided no substantive assistance or instruction regarding how it was to be completed, leaving Plaintiff to navigate the reporting requirements without adequate support.

32. Furthermore, despite the task's complexity, Defendant Omni Dental's management provided no formal training, written instructions, or onboarding support to assist Plaintiff in fulfilling this newly acquired daily responsibility.

33. When Plaintiff sought clarification about the Production Spreadsheet, Defendant Craig responded with seemingly encouraging remarks but provided no meaningful guidance. This superficial engagement left Plaintiff without the resources needed to properly complete the task.

34. Despite occasionally portraying herself as supportive and offering sporadic praise to Plaintiff, Defendant Craig's conduct was ultimately disingenuous. She was a key driver of the discriminatory treatment Plaintiff endured. This duplicity revealed that the criticisms later directed at Plaintiff were not rooted in genuine performance concerns but were manufactured to conceal the true, discriminatory motives behind her targeting and eventual termination.

35. Aside from the lack of guidance, Plaintiff complied with the directive and submitted the completed spreadsheet on a daily basis. Defendant Craig later admitted that she had never been required to complete the spreadsheet and acknowledged that she did not know how to properly do so. This admission highlighted the unreasonable expectations placed solely on

Plaintiff and underscored the disparate treatment and racially hostile work environment she endured.

36. The daily allocation of responsibilities, wherein Plaintiff, an African American employee, was consistently burdened with additional tasks without training or support, while her Caucasian counterparts were shielded from similar demands, reflect a clear pattern of unequal treatment.

37. The unequal treatment was not an isolated one-time occurrence, but a recurring pattern that took place on a daily and weekly basis. It required Plaintiff to perform additional daily and weekly uncompensated work that extended beyond Plaintiff's scheduled shift hours.

38. The pattern of a racially hostile work environment continued from December 2024, following the pretextual termination of Plaintiff's daughter, as previously described, until Plaintiff's own termination in January 2025. Over a period of weeks, the racially hostile work environment escalated reaching a crescendo of hostility in the final days of Plaintiff's employment.

39. Defendant Omni Dental and its management team's unequal distribution of duties imposed an unfair and disproportionate burden on Plaintiff without any rational or performance-related justification. These actions were not inadvertent, but rather reflected an intentional pattern of exclusion, excessive workload, and marginalization by Defendant Craig with the intent to force Plaintiff to leave.

40. When Plaintiff sought clarity and fairness from Defendants Omni Dental and its employees, as well as from Dr. Ray, she was met with hostility, indifference, and dismissiveness from the Defendants. Although Dr. Ray offered some support, his involvement and authority were limited, and his efforts were disregarded by the Defendants.

41. Plaintiff was subsequently subjected to demeaning and unprofessional treatment by Defendants Craig. On numerous occasions, Defendant Craig spoke to Plaintiff in a condescending and disrespectful manner, often raising her voice or belittling Plaintiff in the presence of other staff members. This conduct created a daily work environment that was hostile, humiliating, and emotionally distressing.

42. Upon information and belief, Defendant Craig's prejudicial conduct was witnessed by several staff members, including three African American employees, who expressed to Plaintiff that they recognized the pattern of behavior and believed Defendant Craig's actions were racially motivated.

43. Moreover, shortly after Plaintiff raised concerns regarding her treatment and formally requested support in managing the new duties imposed on her, Defendant Craig began targeting her with vague, unsubstantiated, and subjective criticisms—clearly aimed at manufacturing a false pretext for her termination and concealing her underlying discriminatory motives.

44. In doing so, Defendant Craig alleged that Ms. Tyler—who had minimal interaction with Plaintiff—made certain negative observations about Plaintiff's demeanor and performance. These alleged performance issues included claims that Plaintiff appeared "disinterested" during a Zoom call, "laughed inappropriately," and failed to promote an in-office financing option to a patient. However, these criticisms lacked any formal documentation, objective basis, or context, and were entirely inconsistent with Plaintiff's documented history as a dedicated, long-tenured employee.

45. Defendant Craig's reliance on these vague allegations—attributed to an individual with no supervisory authority over Plaintiff and minimal engagement with her—underscores the discriminatory nature of her conduct.

46. The nature and timing of these accusations—made immediately after Plaintiff assumed additional responsibilities and sought assistance—strongly suggest a coordinated effort to undermine her credibility and fabricate a pretext for adverse employment action.

47. Notably, the Zoom meeting in question took place during Plaintiff's designated lunch break, a time during which Plaintiff was still required to assist patients and manage front desk operations. Moreover, the allegation that Plaintiff failed to properly promote a financial product is wholly unfounded, as Plaintiff had never received any training or instruction on how to present or explain the program, making any criticism of her performance in this regard both unreasonable and pretextual.

48. These actions were carried out by Defendant Craig not merely in her capacity as an employee, but as an active participant in a deliberate and targeted campaign against Plaintiff. While Ms. Tyler was not a decision-maker and is not a party to this action, her limited involvement—including her role in introducing the "Production Spreadsheet" and her purported observations later cited by Defendant Craig—was leveraged by Defendant Craig to further this campaign. Defendant Craig's conduct reflects both personal animus and discriminatory intent rooted in Plaintiff's race.

49. The treatment Plaintiff received stood in stark contrast to that of her Caucasian counterparts, who were not subjected to the same level of scrutiny, nor burdened with equivalent daily responsibilities. The highly selective enforcement of workplace expectations and the fabrication of performance concerns were directed solely at Plaintiff, as the only African American in a visible front desk role, in a manner that was discriminatory.

50. The actions taken by Defendant Craig were not isolated incidents, but part of an ongoing pattern of discrimination.

51. Significantly, Dr. Ray, who observed Plaintiff's conduct firsthand, strongly disputed the negative characterizations made by Defendant Craig. Additionally, Dr. Ray expressly conveyed to Defendant Craig that Plaintiff was attentive and respectful during the Zoom meeting in question and further affirmed that, throughout her employment, she had consistently exhibited professionalism, competence, and a strong commitment to her responsibilities.

52. Additionally, after recognizing that Plaintiff had been denied the necessary tools and guidance to complete her new responsibilities, Dr. Ray personally offered her assistance in completing the daily tasks, further underscoring the lack of support provided by Defendant Omni Dental's management and the unjust treatment Plaintiff endured.

53. Yet, on January 24, 2025, without consulting Dr. Ray or conducting any meaningful investigation, Defendant Craig notified Dr. Ray of Plaintiff's impending termination. Dr. Ray was completely blindsided by this decision as he had not been included in any discussions regarding Plaintiff's employment status.

54. Defendant Craig informed Dr. Ray that Defendants Dr. Ellis and Dr. Cain—two Caucasian male dental providers and co-owners of Defendant Omni Dental—fully supported the decision to terminate Plaintiff. Contrastingly, though, Plaintiff had no significant professional relationship with either of these defendants. Upon information and belief, they had never interacted with Plaintiff in any meaningful capacity, nor had they personally reviewed her work performance.

55. The involvement of Defendants Dr. Cain and Dr. Ellis in the decision-making process—despite their lack of direct knowledge of Plaintiff's performance—was not incidental. Rather, it was part of a deliberate and coordinated effort among the defendants to conspire against Plaintiff by manufacturing a façade of consensus.

56. Defendants' collective front was designed to conceal the discriminatory motives underlying Plaintiff's unjust removal and to shield those responsible from accountability. It demonstrates a shared intent among the Defendants to deprive Plaintiff of her contractual and employment rights on the basis of race.

57. Despite the lack of any legitimate basis for the allegations against Plaintiff, neither Defendant Dr. Ellis nor Defendant Dr. Cain took any action to question the decision or to protect Plaintiff from the unfair treatment she was subjected to.

58. Instead, Defendants Dr. Ellis and Dr. Cain, acting both in their capacities as supervisory figures within Defendant Omni Dental and in their individual capacities, endorsed Plaintiff's termination without basis or inquiry. Their failure to intervene and their later attempts to fabricate justification reflect both official complicity and personal involvement in discriminatory conduct.

59. When Dr. Ray attempted to advocate on Plaintiff's behalf and raised legitimate concerns with Defendants Dr. Cain, Dr. Ellis, and Craig, his input was summarily dismissed. Rather than investigate or consider his perspective as an owner of Defendant Omni Dental and someone with direct knowledge of Plaintiff's performance, the defendant doctors actively endorsed the false narrative being used to justify her removal.

60. Likewise, Defendant Craig explicitly told Dr. Ray to "keep his personal feelings out of this," a statement that not only disregarded Dr. Ray's professional judgment but also underscored the hostile and racially charged environment in which Plaintiff was being targeted. This exchange further illustrates the coordinated nature of the Defendants' actions and their intent to suppress dissent in furtherance of a discriminatory agenda.

61. Defendant Craig used vague, subjective, and racially coded language to disparage Plaintiff, claiming that she was "overpaid," "rude," "lazy," and that she "refused to communicate"

with a Caucasian colleague. Defendant Craig further alleged—without any factual basis—that Plaintiff was hindering her Caucasian counterpart from reaching her full potential. These statements were wholly unsupported by documentation, performance records, or prior warnings. Rather, they reflected deeply biased and discriminatory assumptions aimed at vilifying Plaintiff and creating a false narrative to justify adverse action.

62. These statements, combined with Defendants' prior conduct and the coordinated nature of the allegations, reflected a racially hostile work environment in which Plaintiff was marginalized, scapegoated, and ultimately terminated under pretextual grounds.

63. Plaintiff was terminated on January 26, 2025, without any formal notice, documentation, or explanation. Defendants directed Dr. Ray—who had no role in the decision-making process—to deliver the termination message on their behalf. This not only further humiliated Plaintiff but also served as an attempt to distance themselves from the action and obscure its discriminatory nature.

64. Dr. Ray's prior, unambiguous endorsement of Plaintiff directly contradicts the pretextual justifications advanced by Defendant Craig. Dr. Ray's support serves as compelling evidence that the adverse actions taken against Plaintiff were not grounded in legitimate performance concerns, but rather in discriminatory intent and a calculated effort to justify her removal under false pretenses.

65. In February 2025, Plaintiff filed for unemployment benefits. Defendants opposed her claim and falsely alleged she had been terminated for misconduct yet failed to provide any substantiated or credible justification for her termination. The allegations presented mirrored the vague, unsupported claims previously manufactured to justify her discharge.

66. At a March 2025 hearing before the South Carolina Department of Employment and Workforce, Defendant Craig appeared on behalf of Defendant Omni Dental and presented

a new series of fabricated allegations—including a baseless assertion that Plaintiff mishandled a deposit. This claim had never been documented, investigated, or raised during Plaintiff's employment.

67. Defendant Craig further claimed that she had counseled Plaintiff for performance issues and described her as "difficult" following her daughter's resignation. These statements were demonstrably false and designed to construct a post hoc justification for Plaintiff's termination.

68. In an attempt to shift blame and obscure the discriminatory motivations behind Plaintiff's firing, Defendant Craig claimed she was pressured to terminate Plaintiff by Defendants Dr. Ellis and Dr. Cain—both of whom had no firsthand knowledge of Plaintiff's work performance. These shifting narratives revealed the coordinated and conspiratorial efforts among Defendants to discredit and remove Plaintiff under false pretenses.

69. Dr. Ray, acting in accordance with his professional obligations, submitted a written statement to the Unemployment Commission that accurately reflected his observations of Plaintiff's conduct, including her professionalism. Upon information and belief, following this submission, Defendants Dr. Ellis and Dr. Cain approached Dr. Ray and attempted to pressure him into altering or falsifying documentation to align with their version of events. Dr. Ray declined to do so.

70. This attempt to influence Dr. Ray's account constituted not only an overt act in furtherance of a conspiracy to terminate Plaintiff under false pretenses and deprive her of her rights but also reflected individual acts of misconduct by Defendants Dr. Cain and Dr. Ellis.

71. The Unemployment Commission ultimately ruled in Plaintiff's favor, recognizing that her termination lacked a factual or legal basis. While not binding, this determination further

supports Plaintiff's position that Defendants' stated reasons for her termination were knowingly false and pretextual.

72. The actions taken by Defendants were not isolated misjudgments, but rather part of an orchestrated campaign to remove Plaintiff through deception, misrepresentation, and manipulation. Plaintiff was singled out, overburdened, falsely accused, and terminated—all while being the only African American employee in a visible front desk role at the time of her dismissal.

73. Defendants' conduct described herein was extreme, outrageous, and intentional. Defendants' collective actions were not only discriminatory but were executed with a level of recklessness and malice that exceeded all bounds of decency. The treatment Plaintiff endured was designed to cause her emotional harm, to damage her reputation, and to isolate her professionally.

74. As a direct result, Plaintiff suffered significant emotional distress, mental anguish, and reputational harm. The conspiracy among multiple Caucasian supervisors to orchestrate her termination, misrepresent the facts, and conceal their discriminatory motives underscores the egregious nature of the hostile work environment and the intentional infliction of emotional distress she endured.

## FIRST CAUSE OF ACTION

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

**(Against Defendant Omni Dental of Sumter, LLC and Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities)**

75. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

76. At all relevant times, Plaintiff was a member of a protected class under 42 U.S.C. § 1981 as an African American woman.

77. Plaintiff was qualified for her position as a Patient Coordinator and performed her duties professionally and competently throughout her nearly ten-year employment with Ray Family and Cosmetic Dentistry and, later, Defendant Omni Dental of Sumter, LLC.

78. Following the merger with Defendant Omni Dental in or around November 2024, Defendants subjected Plaintiff to discriminatory treatment based on her race on a daily and weekly basis, including but not limited to:

    a. Assigning her additional and more complex job duties without training or support;

    b. Failing to assign such duties to similarly situated Caucasian employees;

    c. Targeting her with false and unsubstantiated allegations of poor performance;

    d. Publicly embarrassing her repeatedly in presence of her professional counterparts, further humiliating ger and undermining her standing in the workplace; and

    e. Terminating her employment without any documented reason or opportunity to respond to allegations.

79. Defendants Craig, Cain, and Ellis participated in or ratified these discriminatory actions. Defendants Dr. Cain and Dr. Ellis—Caucasian males who had little to no professional interaction with Plaintiff—purportedly supported her termination without any firsthand knowledge of her performance, further reflecting the pretextual nature of her discharge.

80. Plaintiff was replaced or treated less favorably than similarly situated Caucasian employees, including Michelle McCoy, who held the same position but was not subjected to increased duties, scrutiny, or discipline.

81. The adverse actions taken against Plaintiff were not based on any legitimate, non-discriminatory reason. Rather, they were motivated by her race and carried out under pretextual justifications.

82. As a direct and proximate result of Defendants' racially discriminatory conduct, Plaintiff suffered loss of income, emotional distress, reputational damage, and other compensable damages.

83. Defendants' conduct was willful, wanton, and carried out in reckless disregard of Plaintiff's federally protected rights, thereby entitling her to actual, compensatory, and punitive damages.

<u>**SECOND CAUSE OF ACTION**</u>

***RACIALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 1981***

**(Against Defendant Omni Dental of Sumter, LLC and Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities)**

84. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

85. Defendants subjected Plaintiff to a racially hostile work environment that was severe, pervasive, and objectively offensive, and which unreasonably interfered with her ability to perform her job duties on a daily and weekly basis.

86. This racially hostile work environment included, but was not limited to:

   a. Imposing excessive and complex job responsibilities on Plaintiff without training or support, which were not imposed on similarly situated Caucasian employees;

   b. Involving Christina Tyler, an affiliate of Defendant Omni Dental, who, though minimally interacting with Plaintiff, participated in the hostile environment by

supporting and reinforcing the marginalization and inequitable expectations imposed upon Plaintiff;

c.  Fabricating false allegations of misconduct and poor performance using racially coded language such as "rude," "lazy," and "overpaid";

d.  Targeting Plaintiff for heightened scrutiny and adverse treatment after her daughter's resignation;

e.  Publicly embarrassing Plaintiff repeatedly in front of her counterparts, creating an intimidating and humiliating atmosphere;

f.  Ignoring the input of Dr. Ray, an African American leader and co-owner at the practice, who directly refuted the false allegations against Plaintiff; and

g.  Terminating Plaintiff under pretextual grounds while shielding Caucasian employees from similar treatment.

87. Defendant Craig and other responsible parties initiated and perpetuated the hostile environment by marginalizing Plaintiff, imposing inequitable expectations, and targeting her with false criticisms after she raised concerns about unfair treatment. Their conduct reflects intentional and discriminatory motives.

88. Defendants Dr. Cain and Dr. Ellis, by participating in and ratifying the decision to terminate Plaintiff without investigation or firsthand knowledge of her performance, furthered the racially hostile conditions.

89. The racially charged nature of the workplace, the false allegations, the public humiliation, and the collective efforts to discredit Plaintiff demonstrate that race was a motivating factor in the hostile treatment she endured.

90. Plaintiff reasonably believed that her treatment was racially motivated and complained about the disparate treatment, only to be further targeted and ultimately terminated.

91. The discriminatory conduct described herein caused Plaintiff significant emotional distress, humiliation, and professional harm, and would have been equally offensive to any reasonable person in her position.

92. As a result of this racially hostile work environment, Plaintiff suffered loss of dignity, emotional and mental anguish, reputational damage, and other compensable injuries.

93. Defendants' conduct was intentional, malicious, and carried out with reckless indifference to Plaintiff's federally protected civil rights, entitling her to compensatory and punitive damages.

**<ins>THIRD CAUSE OF ACTION</ins>**

***BREACH OF CONTRACT***

**(Against Defendant Omni Dental of Sumter, LLC)**

94. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

95. Plaintiff was employed by Ray Family and Cosmetic Dentistry beginning on or about March 17, 2015. In or around November 2024, the practice merged with Defendant Omni Dental, at which point Plaintiff's employment continued uninterrupted.

96. At the time of the merger, Plaintiff and other employees were expressly assured—both orally and through course of dealing—that the terms and conditions of their existing employment, including duties, compensation, and policies, would remain unchanged. These assurances constituted a binding employment agreement supported by consideration, namely, Plaintiff's continued service.

97. Specifically, Plaintiff and her daughter were told that the arrangement allowing family members to work together would continue without change. Plaintiff relied on these assurances in continuing her employment with Defendant Omni Dental.

98. Defendant Omni Dental further represented that Plaintiff's existing employment arrangement—including her role, responsibilities, and workplace conditions—would remain intact and that no adverse changes would be imposed without notice or justification.

99. Plaintiff fully performed her duties under the employment agreement and maintained a clean disciplinary record, meeting or exceeding all performance expectations.

100. Despite this, Defendant Omni Dental unilaterally and materially altered the terms of Plaintiff's employment. This included:

    a. Imposing additional responsibilities not required of similarly situated employees;

    b. Targeting Plaintiff based on an alleged anti-nepotism policy that was never provided, documented, or enforced uniformly;

    c. Forcing the resignation of Plaintiff's daughter in violation of the prior agreement; and

    d. Ultimately, terminating Plaintiff without notice, documentation, or any legitimate or substantiated cause.

101. These acts constituted a clear breach of the parties' employment agreement, including altering agreed-upon terms of employment and terminating Plaintiff without cause or adherence to proper procedures.

102. As a direct and proximate result of Defendant Omni Dental's breach, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other economic and non-economic harms.

## FOURTH CAUSE OF ACTION
### *BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT INTENT*
### (Against Defendant Omni Dental of Sumter, LLC)

103. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

104. Upon the merger between Ray Family and Cosmetic Dentistry and Defendant Omni Dental in or around November 2024, Defendant Omni Dental—through its agents and representatives—expressly informed Plaintiff and other existing employees that the terms and conditions of their employment would remain unchanged. This included assurances that job responsibilities, employment policies, and workplace expectations would continue as they had prior to the merger.

105. Defendant Omni Dental also affirmatively represented that family members, including Plaintiff and her daughter, would be permitted to continue working together, consistent with prior arrangements under Dr. Ray's ownership.

106. These representations were made knowingly and with the intent of inducing Plaintiff to remain employed under the new entity. Plaintiff reasonably relied on these assurances and continued her employment with Defendant Omni Dental, forgoing other employment opportunities and assuming the continued stability of her position.

107. At the time the representations were made, Defendant Omni Dental either knew they were false, or made them with reckless disregard for the truth. In fact, Defendant Craig later cited a previously undisclosed anti-nepotism policy—without producing any documentation or notice thereof—as justification for forcing Plaintiff's daughter to resign, in direct contradiction of the representations made at the time of the merger.

108. Following the forced resignation of her daughter, Plaintiff was subjected to increased scrutiny, additional burdensome responsibilities not assigned to similarly situated non-African American employees and ultimately terminated under false and pretextual circumstances.

109. The misrepresentations made by Defendant Omni Dental formed part of a broader scheme to mislead and manipulate Plaintiff into remaining employed under false pretenses, with the ultimate intent to remove her without legal justification at a later time. This conduct constitutes not only a breach of contract, but a breach accompanied by fraudulent intent.

110. As a direct and proximate result of this breach and accompanying fraud, Plaintiff has suffered substantial damages, including loss of income and benefits, emotional distress, reputational harm, and other economic and non-economic losses.

111. Plaintiff is further entitled to punitive damages due to the willful, wanton, and fraudulent nature of Defendant's conduct.

## FIFTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendant Omni Dental of Sumter, LLC, and Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities)**

112. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

113. Defendants' conduct, including assigning Plaintiff unreasonable and unsupported job duties, subjecting her to disparate treatment compared to similarly situated Caucasian employees, publicly embarrassing her on a repeated basis in the presence of her counterparts, making false and racially charged accusations, and terminating her under false pretenses, was extreme and outrageous. Such conduct was also intended to cause severe emotional harm.

114. Defendant Craig's admission that she did not know how to complete the "Production Spreadsheet," yet forcibly required Plaintiff to complete and submit it daily without training or support, was just one example of the numerous unreasonable and unsupported demands placed on Plaintiff. Coupled with Defendants' coordinated efforts to fabricate false and

racially charged allegations, publicly humiliate Plaintiff, and subject her to disparate treatment, this conduct demonstrates a deliberate and malicious campaign intended to humiliate, isolate, and inflict severe emotional distress on Plaintiff.

115. Defendants acted intentionally and recklessly, with conscious disregard for Plaintiff's emotional well-being, fully aware that their actions were likely to cause severe emotional distress.

116. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered severe emotional distress, including anxiety, humiliation, depression, and loss of self-esteem.

117. Defendants' conduct was willful and malicious, carried out with the intent to cause harm or with reckless disregard of the likelihood of causing harm, thereby justifying an award of punitive damages.

118. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer damages, including emotional pain and suffering, mental anguish, damage to her professional reputation, and economic losses.

### SIXTH CAUSE OF ACTION

*CIVIL CONSPIRACY*

**(Against Defendants Dr. Brandon Cain, Dr. Robert Ellis, and Gina Craig, in their individual capacities)**

119. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

120. At all relevant times, Defendants Dr. Cain, Dr. Ellis, and Craig, acting in concert and agreement with one another, engaged in a common plan to discriminate against Plaintiff on the basis of race, create a racially hostile work environment, and wrongfully terminate Plaintiff's employment.

121. Defendants conspired to fabricate false performance issues and negative characterizations of Plaintiff, including allegations made during the unemployment hearing that were never documented or brought to Plaintiff's attention.

122. Defendants' coordinated actions included targeting Plaintiff for unfair assignments, refusing to provide support or training, falsely accusing Plaintiff of misconduct, and orchestrating her termination under pretextual and racially motivated reasons.

123. This conspiracy was intended to, and did, injure Plaintiff by depriving her of her contractual and statutory rights, damaging her professional reputation, causing emotional distress, and causing the loss of her employment.

124. As a direct and proximate result of Defendants' civil conspiracy, Plaintiff has suffered damages, including but not limited to economic losses such as wage and benefits, emotional distress, humiliation, and reputational harm.

## JURY TRIAL REQUESTED

125. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

126. **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, and issue the following relief:

    a. Declare that the acts and omissions complained of herein are unlawful;

    b. Enter judgment in favor of Plaintiff and against Defendants for all causes of action alleged herein, in an amount that is fair, just, and reasonable, including actual, compensatory, special, and punitive damages;

    c. Issue an injunction enjoining Defendants, their officers, agents, employees, attorneys, successors, and all persons acting in concert or participation with them, from engaging in the unlawful employment practices set forth herein, including those found to violate 42 U.S.C. § 1981 (Race Discrimination and Racially Hostile

Work Environment), and Plaintiff's rights under South Carolina law, including Breach of Contract, Breach of Contract Accompanied by Fraudulent Intent, Intentional Infliction of Emotional Distress, and Civil Conspiracy;

d. Award Plaintiff all appropriate actual and compensatory damages, including but not limited to: mental anguish, emotional distress, pain and suffering, damage to professional reputation, loss of economic opportunities (past and future), back pay, front pay, future earnings with cost-of-living adjustments, prejudgment interest, lost fringe benefits, and lost retirement contributions, in an amount to be determined by the jury;

e. Award Plaintiff her costs and expenses incurred in this action, including reasonable attorneys' fees, and other litigation expenses; and

f. Grant such other and further relief as the Court deems just and proper to afford Plaintiff full and complete relief.

Respectfully Submitted,

s/Donald Gist
Donald Gist, Esq. Fed. ID# 7178
*GIST LAW FIRM, P.A.*
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

*Attorney for Plaintiff*

September 11, 2025